IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-cv-1071

**RYAN MARCK, an individual**

    Plaintiff,

v.

**THE CITY OF AURORA,**
**OFFICER PAULMICHAEL TRENERY, in his individual capacity,**
**OFFICER JOSHUA E. PERROTT, in his individual capacity**

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Ryan Marck, by and through counsel, Baumgartner Law, L.L.C., respectfully submits this Complaint against the Defendants and alleges the following:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

2. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 USC §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.

### PARTIES

3. Plaintiff Ryan Marck is and was at all relevant times a citizen of the State of

Colorado, residing in El Paso County, Colorado.

4. Defendant, City of Aurora, is a governmental entity in the state of Colorado.

5. Defendant, Aurora Police Department, is a governmental entity in the state of Colorado in Aurora, Colorado.

6. Defendant, Officer Paulmichael Trenery, is or was at all times relevant a citizen of the State of Colorado employed by the Aurora Police Department.

7. Defendant, Officer Joshua E. Perrott, is or was at all times relevant a citizen of the State of Colorado employed by the Aurora Police Department.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

    a. **Background Facts**

9. On September 11, 2019, Ryan Marck and his girlfriend were sitting in his truck smoking a cigarette.

10. Ryan was legally parked on a public street and had not committed any traffic or criminal offences.

11. At roughly 3:00 a.m., Aurora Police Department received a call about a possible suspicious vehicle.

12. At approximately 3:07 a.m., Officers Trenery and Perrott arrived at the location where Ryan Marck and his girlfriend were parked.

13. Officer Trenery approached Ryan Marck's driver side door and Officer Perrot approached the passenger side door.

14. Officer Trenery stated he got a call in regard to a suspicious truck.

15. Officer Trenery asked if Mr. Marck lived nearby. Mr. Marck responded that he and his girlfriend were looking for a friend who was stranded in the neighborhood and needed a ride home.

16. Mr. Marck asked if there was a problem and Officer Trenery stated, "yeah, we were called over here." Officer Trenery further stated that they did not live there, it was 3:00 a.m., and that someone called to report them smoking in the truck.
    a. At this point it is clear that Officer Trenery does not have any reasonable suspicion to believe a crime has been or may be committed because (1) an inanimate object like a car cannot by itself be suspicious and (2) a person who is literally in compliance with relevant laws cannot ever be reasonably construed into somehow being involved with criminal activity.

17. Nevertheless, Officer Trenery's statement demonstrates his mindset: citizens are to be dominated and controlled by the police at all times even if the constitution demands the police leave a citizen alone.

18. Mr. Marck was legally parked on a public street and possessed a valid driver's license and registration for his truck.

19. Officer Treney asked for Mr. Marck's license, registration, and insurance.

20. In response, Mr. Marck correctly stated that he had a legal right to park in that location and smoke in his truck, despite not living there or it being 3:00 a.m., and he did not have to provide the officer with the requested information.

21. Without any explanation or warning, Officer Treney immediately and illegally entered the truck by opening the driver side door and grabbed Mr. Marck by the arms and pulled him out of the truck using physical force.

22. Officer Trenery simultaneously yells, "You are fixing to get tased," while trying to pull Mr. Marck out of the truck.

23. Officer Trenery had a grip on Mr. Marck's arm through the driver side window and continued to try and open the door and pull Mr. Marck out of the truck.

24. Officer Trenery then pulls Mr. Marck out of the truck and puts him straight to the ground and handcuffs him. During the unlawful violence visited upon Mr. Marck his arm and wrist became injured.

25. Officer Perrott knows that Officer Trenery's actions are unlawful but chooses not to intervein and stop the unlawful arrest and excessive force.

26. Mr. Marck is then searched, both his person and vehicle, and arrested for "Fail to Obey Order" and "Possession of Drug Paraphilia."

27. The Aurora City Attorney knew that there was never any reasonable suspicion or probable cause for an arrest but nevertheless waited until the last minute to dismiss all criminal charges against Mr. Marck, who was not represented by an attorney, because there was hope that he would still plea guilty to a crime he did not commit.

## CLAIMS FOR RELIEF
## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

28. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

29. The Fourth Amendment of the U.S. Constitution prohibits unreasonable or

excessive use of force in connection with searches and seizures. While detaining, restraining and/or arresting a person the Fourth Amendment protections only allow police officers and deputies to use the amount of force that is reasonably necessary under the circumstances.

30. The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

31. It is clearly established in Colorado and the 10th Circuit that it is unreasonable to arrest a person without probable cause. *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir.2007); *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir.2008).

32. It is clearly established in Colorado and the 10th Circuit that it is unreasonable for officers to use gratuitous force on a compliant arrestee. *McCowan v. Morales*, 945 F.3d 1276 (10th Cir.2019).

33. "Tenth Circuit precedent clearly established […] that a law enforcement official who fails to intervene to prevent another law enforcement official's excessive force may be liable under §1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996).

**FIRST CLAIM FOR RELIEF**
**Violation of the Fourth Amendment of the United States Constitution**
**Excessive Force Resulting in Injury**
**(By Plaintiff Ryan Marck against All Defendants)**

34. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

35. A "seizure" for purposes of the Fourth Amendment to the U.S. Constitution occurs when an officer intentionally restrains the freedom of a person to simply walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Without question, a seizure occurs when an officer grabs a nonresistant person and forcefully removes them from a vehicle without probable cause that a crime has been committed because at this point Mr. Marck cannot just simply walk away.

36.     Any use of force during a seizure is considered unconstitutional when there is not, and never was, any probable cause to arrest a citizen.

37.     At no point during the seizure of Mr. Marck did Officer Trenery ever have probable cause, let alone reasonable suspicion, of criminal activity.

38.     As a result of Officer Trenery's seizure, Mr. Marck sustained injuries to his wrist and arm as a result of excessive force.

**SECOND & THIRD CLAIM FOR RELIEF**
**Unconstitutional Violation of the Fourth Amendment of the United States Constitution**
**Unconstitutional Seizure:**
**Lack of Reasonable Suspicion and/or Probable Cause & Failure to Intervene**
**(Plaintiff against Officer Trenery and Officer Perrott)**

39.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Compliant.

40.     Mr. Marck was approached by Officer Trenery based on a call about a suspicious vehicle.

41.     Mr. Marck was legally parked on the street with valid registration and driver's license.

42.     Mr. Marck, at the time of the encounter, was not doing anything illegal and Officers Trenery and Perrott could not, with the information known to them at the time, suspect Mr. Marck of any crime.

43.     However, despite the lack of articulable suspicion that crime was a foot, or probable cause, Officer Trenery arrested Mr. Marck and caused injuries all because Mr. Marck questioned an officer's motivations and authority which is a right of every citizen to exercise.

44. Officer Perrott knew that Officer Trenery did not have any articulable suspicion that a crime was afoot, or that there was probable cause for an arrest and intentionally chose not to intervein and prevent the unlawful arrest and assault of Mr. Marck.

### FOURTH CLAIM FOR RELIEF
**Unconstitutional Customs and Practices Resulting in a Violation of Constitutional Rights and C.R.S. 24-31-113.**
**(Plaintiff against The City of Aurora)**

45. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

46. The City of Aurora has ultimate decision and policy making power in regard to the hiring, training and supervision of Aurora police officers.

47. Aurora police officers have a long history of never being disciplined for arresting people with excessive force and without probable cause. The purpose for this failure to discipline is that the Aurora Police Department has embraced a series of cultural norms, values, and mores that socialize Aurora police officers to believe in the following non-exhaustive beliefs: (1) every order they give is lawful no matter the circumstances, (2) their authority is never to be questioned, and (3) citizens who question the authority or are perceived as not showing proper deference/respect to an Aurora police officer may be violently arrested without probable cause.

48. Aurora police officers know that when they arrest people with excessive force and without probable cause they will not be disciplined for their law violations and district/city attorneys will move forward with prosecutions, even when it is discovered there is no probable cause for an arrest, with the hope of at least coercing a guilty plea.

49. To be falsely arrested and assaulted is among the most horrific things that can happen to a person. Unfortunately, the culture of the Aurora Police Department promotes the arresting of citizens with excessive force and without probable cause because there is an internal need and desire to demonstrate they have power over citizens at all times and over all matters. The

use of excessive force during an unlawful arrest with the knowledge that there will be no repercussions for the law violations by the police communicates the message of dominance and total control of the police over the citizenry.

a. As an example, on August 2, 2020, Aurora Police Department held at gunpoint a van full of juveniles along with their guardian, Brittney Gilliam, on the suspicion that the van they were in had been stolen. Aurora Police Department, without investigating properly, had forced everyone out of the van, placed all of them in handcuffs, except the youngest juvenile because the handcuffs were too big for her wrists, then held them face down on the ground at gunpoint. The van was not stolen. In fact, Aurora Police Department did not investigate that the license plate they were looking for was actually registered to an out-of-state motorcycle. Aurora Police Department did not have probable cause to stop this vehicle, or to draw their weapons on the adults and children inside the van. No officers have been discipled for this incident.

b. On August 24, 2019, two weeks prior to the incident with Mr. Marck, Aurora Police Department received a call regarding a suspicious person walking down the street. Police stopped this person, Elijah McClain, detained him with excessive force, and eventually killed Mr. McClain. A recent independent investigation into Mr. McClain's death by Aurora Police Department revealed that the officers did not have probable cause stop Mr. McClain but they continued to accost, assault, and eventually kill him because he kept asking "why are you doing this?" No officers have been discipled for this incident.

c. On April 3, 2019, Aurora police officers pulled over Teddy Tanoris Pittman, for failing to use a turn signal. Officers did not cite Mr. Pittman for failing to use the turn signal, but demanded he step out of the vehicle to be searched for weapons after being asked if he was a gang member. Mr. Pittman refused to get out of his vehicle and was then forcefully removed by Aurora police officers. A search of his person reviled no contraband and no weapons. In January of 2019, this same set of circumstances also occurred with Mr. Pittman and Aurora police officers. No Aurora police officers have been disciplined for their obvious violations of Mr. Pittman's constitutional rights.

      d. On November 21, 2018, Jamie Alberto Torres was told to exit his garage by an Aurora Police Department officer responding to call of a noise complaint. Mr. Torres hesitated at the illegal order, so the Aurora police officer grabbed Mr. Torres, slammed him to the ground with his hands behind his back, and continued to attack him after putting handcuffs on him. To cover up the excessive force, Mr. Torres was charged with resisting arrest and obstructing an officer; he was found not guilty by a jury. Mr. Torres filed a lawsuit against Aurora Police Department, and it was settled for $285,000 in 2020. No Aurora Police Department officers were disciplined as a result of this incident.

50. Unlawful arrests with excessive force go unpunished in Aurora. Prosecutors will move forward with cases and judges will grant police officers the benefit of the doubt in cases like Ryan Marck's even where there is clear evidence showing the police did not have probable cause for an arrest and thus engaged in an illegal assault of a citizen.

51. Officer Trenery, along with his fellow officer, Officer Perrott, clearly did not possess any probable cause for Ryan Marck's arrest. Nevertheless, Officer Trenery illegally arrested and assaulted Mr. Marck because their authority was questioned by a citizen taking advantage of his constitutional rights and the defendants know the Aurora Police Department will not discipline them for their clearly illegal activity.

52. The failure to discipline police officers when they arrest people without probable cause and with excessive force has created and sustained a de-facto policy and lawless cultural attitude that has given the unreasonable assaulting and seizing of citizens by Aurora police officers the power of law.

53. The lawless culture that exists within the Aurora Police Department, which has the power of law, is the moving force behind Mr. Marck's injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor on each of his respective claims against Defendants as follows:

a. Compensatory damages in an amount that will fully and fairly compensate the Plaintiff for his injuries, damages, and losses pursuant to 42 U.S.C. §1983;

b. Punitive damages pursuant to federal law as punishment and deterrence against the commission of future such conduct;

c. Pre- and post-judgment interest;

d. Injunctive relief sufficient to prevent further constitutional violations by Defendants;

e. Reasonable attorney's fees, expert witness fees, and the cost of this action pursuant to 42 U.S.C. §1988 and any other applicable federal or state law.

f. Any other relief the Court deems proper and just.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 16th day of April 2021.

Respectfully submitted,
BAUMGARTNER LAW, L.L.C.

 s/ Matthew J. Greife
Dr. Matthew J. Greife, #43487
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
matt@baumgartnerlaw.com

Plaintiff's Address:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113