IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-1071-WJM-SKC

RYAN MARCK, an individual,

     Plaintiff,

v.

THE CITY OF AURORA,
OFFICER PAULMICHAEL TRENERY, in his individual capacity, and
OFFICER JOSHUA E. PERROTT, in his individual capacity,

     Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

---

This matter is before the Court on:

(1) Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand filed by

    Defendant City of Aurora ("City") ("City's Motion") (ECF No. 27); and

(2) Motion to Dismiss on Behalf of Officer Defendants filed by Defendants

    Paulmichael Trenery and Joshua E. Perrott (jointly, "Officer Defendants")

    ("Officer Defendants' Motion") (ECF No. 28).

Each motion has been fully briefed.  For the reasons explained below, the City's Motion

is granted, and the Officer Defendants' Motion is granted in part and denied in part.

### I. BACKGROUND

The following factual summary is drawn from Plaintiff Ryan Marck's Amended

Complaint and Jury Demand ("Complaint").  (ECF No. 25.)  The Court assumes the

allegations contained in the Complaint are true for the purpose of deciding the City's

Motion and the Officer Defendants' Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

At roughly 3:00 a.m. on September 11, 2019, the Aurora Police Department received a call reporting a "possible suspicious vehicle."  (ECF No. 25 ¶ 11.)  At approximately 3:07 a.m., Defendants Trenery and Perrott arrived at the location where Marck and his girlfriend were sitting in his truck and smoking.  (*Id.* ¶¶ 9, 12.)  The truck was legally parked.  (*Id.* ¶ 10.)  Officer Trenery approached the truck's driver-side door, and Officer Perrott approached the passenger-side door.  (*Id.* ¶ 13.)  Officer Trenery told Marck that he had received a call regarding a suspicious truck and asked if Marck and his girlfriend lived nearby.  (*Id.* ¶ 15.)  Marck responded that they were looking for a friend who was stranded in the neighborhood and needed a ride.  (*Id.*)

Marck asked Officer Trenery if there was a problem, and he responded, "Yeah, we were called over here."  (*Id.* ¶ 16.)  Officer Trenery further stated that Marck did not live there, it was 3:00 a.m., and someone called to report them smoking in the truck. (*Id.*)  Then Officer Trenery asked for Marck's license, registration, and insurance.  (*Id.* ¶ 19.)  Marck responded that he had a legal right to park in that location and smoke in his truck and that he did not have to provide the officer with the documentation he had requested.  (*Id.* ¶ 20.)

Without explanation or warning, Officer Trenery opened the driver-side door and pulled Marck out of the truck.  (*Id.* ¶ 21.)  As he pulled him out of the truck, he yelled, "You are fixing to get tased."  (*Id.* ¶ 22.)  After pulling him out of the truck, he put Marck on the ground and handcuffed him.  (*Id.* ¶ 24.)  At some point during these events, Marck's "arm and wrist became injured."  (*Id.*)

Then the Officer Defendants searched Marck's person and truck, and they arrested him for "Fail [*sic*] to Obey Order" and "Possession of Drug Paraphilia [*sic*]."  (*Id.* ¶ 26.)  However, the City Attorney eventually dropped all charges against Marck.  (*Id.* ¶ 27.)

## II. PROCEDURAL HISTORY

In his Complaint, Marck asserts four claims pursuant to 42 U.S.C. § 1983, which allows an injured person to seek damages for the violation of his federal rights against a person acting under color of state law.  *See* 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  His four claims are: (1) a Fourth Amendment excessive force claim against all Defendants ("Claim One") (ECF No. 25 ¶¶ 34–38); (2) a Fourth Amendment unconstitutional seizure claim against Officer Trenery ("Claim Two") (*id.* ¶¶ 39–44); (3) a Fourth Amendment failure to intervene claim against Officer Perrott ("Claim Three") (*Id.*); and (4) a derivative *Monell* claim against the City ("Claim Four") (*id.* ¶¶ 45–55).

The Officer Defendants' Motion was filed on August 31, 2021, in which the Officer Defendants seek to dismiss all claims against them.  (ECF No. 28.)  Marck filed a response (ECF No. 36), to which the Officer Defendants replied (ECF No. 45).

The City's Motion was also filed on August 31, 2021, in which the City seeks to dismiss all claims against the it.  (ECF No. 27.)  Marck filed a response (ECF No. 35), to which the City replied (ECF No. 42).

## III. LEGAL STANDARDS

### A.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The

Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## B.   Qualified Immunity

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted).  "Once the qualified immunity defense is asserted," the plaintiff must show: "first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

4

authority from other courts must have found the law to be as the plaintiff maintains."

*Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted).  "A plaintiff need not show

the very act in question previously was held unlawful in order to establish an absence of

qualified immunity."  *Id.* (internal quotation marks omitted).  But "[a]n officer cannot be

said to have violated a clearly established right unless the right's contours were

sufficiently definite that any reasonable official in his shoes would have understood that

he was violating it."  *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611

(2015) (internal quotation marks omitted).

"The dispositive question is 'whether the violative nature of *particular* conduct is

clearly established.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original)

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  Therefore, a plaintiff may not

defeat qualified immunity "simply by alleging violation of extremely abstract rights."

*White v. Pauly*, 137 S. Ct. 548, 552 (2017).  Nonetheless, the clearly established inquiry

"involves more than a scavenger hunt for prior cases with precisely the same facts.

*Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

## IV. ANALYSIS

### A.   The Officer Defendants' Motion

The Officer Defendants move to dismiss Claims One, Two, and Three.  (ECF No.

28.)  The Court considers their arguments on each claim, starting with Claim Two.

#### 1.   Claim Two Against Officer Trenery: Unconstitutional Seizure

The Tenth Circuit has identified three categories of police-citizen encounters: (1)

consensual encounters which do not implicate the Fourth Amendment; (2) investigative

detentions which are Fourth Amendment seizures of limited scope and duration and

must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the

most intrusive of Fourth Amendment seizures, which are reasonable only if supported by probable cause.  *United States v. Torres–Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998).

Marck brings Claim Two based on two theories, pleaded in the alternative.  (*Id.* ¶¶ 39–44.)  His first theory is that Officer Trenery unconstitutionally seized him because he stopped him without reasonable suspicion.  (*Id.*)  His second theory is that Officer Trenery unconstitutionally seized him because he arrested him without probable cause. (*Id.*)

For the sake of clarity, the Court considers the Officer Defendants' Motion in relation to each theory separately.

  a.  *First Theory: Unconstitutional Stop Without Reasonable Suspicion*

    (i)    Whether Marck Stated a Claim

First, the Court considers the Officer Defendants' initial encounter with Marck in which they parked their patrol car near Marck's truck, approached Marck, asked him questions, and requested his driver's license, registration, and insurance.  (ECF No. 25 ¶¶ 9–19.)  The Officer Defendants do not dispute that this initial encounter was an investigatory stop.  (ECF No. 28 at 5; ECF No. 36 at 7.)  Thus, for the purposes of this Order only, the Court assumes this initial encounter was an investigatory stop, which is a seizure under the Fourth Amendment.[1]

---

[1] In any subsequent briefing on this issue, the parties are directed to explicitly analyze whether the circumstances of this stop amount to a Fourth Amendment seizure.  The Tenth Circuit has found no seizure in several similar cases.  *See United States v. Madden*, 682 F.3d 920, 926 (10th Cir. 2012) (holding no seizure where officer approached parked vehicle, asked driver what he was doing, and requested his driver's license); *United States v. Tafuna*, 5 F.4th 1197, 1202 (10th Cir. 2021) (holding no seizure where officer parked his marked police vehicle at angle to the driver's car and activated vehicle's takedown lights, then approached the car and asked for the driver's name and birth date).

Reasonable suspicion is required to justify an investigatory stop, meaning the officer must have a particularized and objective basis for suspecting legal wrongdoing. *United States v. Cortez,* 449 U.S. 411, 417–18 (1981).  The reasonable suspicion standard has been described by the Tenth Circuit as follows:

> Police officers must have more than a hunch to justify stopping an individual, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.  We have held that as long as the detaining officer has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved in any illegality.  We apply an objective standard to determine whether the facts available to the officer at the moment of the seizure or the search would warrant a man of reasonable caution in the belief that the action taken was appropriate.

*United States v. Madrid,* 713 F.3d 1251, 1256 (10th Cir. 2013) (quotations and citations omitted; alterations incorporated).

The Officer Defendants argue that there was reasonable suspicion to justify the investigatory stop based on several factors: (1) the Officer Defendants were responding to a call about a suspicious vehicle; (2) when they arrived at the location, they observed Marck and his girlfriend sitting in a parked truck, smoking; (3) the stop occurred at 3:00 a.m.; and (4) Marck's explanation that he was looking for a friend who was stranded in the neighborhood was implausible.  (ECF No. 28 at 8–9.)

The Officer Defendants also argue that Marck's denial of Officer Trenery's request that he produce his documentation was a factor supporting reasonable suspicion.  (*Id.*)  But this event occurred *after* the stop and immediately before Marck was pulled from the truck and arrested.  (ECF No. 25 ¶¶ 20–21.)  Thus, it can be considered as a factor relevant to determining whether there was probable cause for

Marck's arrest, but it cannot be considered as a factor in determining whether the Officer Defendants had reasonable suspicion to justify the investigatory stop.

In his response to the Officer Defendants' Motion, Marck argues that there was not reasonable suspicion to support the initial stop because his actions prior to the stop had "no indicia of criminality."  (ECF No. 36 at 7.)  He argues that a call about something "suspicious," without further details, is not indicative of criminal activity.  (*Id.*)  And he asserts that when the Officer Defendants arrived at the scene, he was not committing any crimes, and he gave them a valid explanation for why he was parked in that location.  (*Id.*)

The Court finds that Marck has adequately alleged that the Officer Defendants lacked reasonable suspicion.  The officers were responding to a call that, according to the Complaint, only reported a "possible suspicious vehicle."  (ECF No. 25 ¶ 11.)  Such a vague, conclusory report that does not include a description of any particular conduct is of minimal relevance to the reasonable suspicion analysis.  *See Cortez v. McCauley*, 478 F.3d 1108, 1118 (10th Cir. 2007) (probable cause not supported by the "flimsiest of information conveyed by a telephone call").  Indeed, were the Court to adopt the Officer Defendant's contention on this point, it could potentially give law enforcement free reign to stop citizens on the basis of "reasonably suspicion" which is grounded on nothing more than an anonymous call to the police by an unknown third party.  The Court categorically rejects this highly troubling line of reasoning.

Additionally, while implausible statements can be a factor supporting reasonable suspicion, the cases cited by the Officer Defendants involve statements that are much more contradictory and implausible than Marck's statements.  (ECF No. 45 at 2.)  For

example, in *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), cited by the Officer Defendants, the Supreme Court determined that police officers properly discredited partygoers' explanation for their lawful presence in a vacant house where they explained they were attending "a bachelor party, but . . . could [not] identify the bachelor." *Id.* at 587. The Court found this explanation implausible because "people normally do not throw a bachelor party without a bachelor." *Id.* Here, Marck's statement that he was looking for a friend who was stranded in the neighborhood is not nearly as implausible or contradictory as the statement at issue in *Wesby*. Thus, the Court finds that Marck's statement is relevant to the analysis but does not weigh heavily in favor of reasonable suspicion.

The fact that the stop happened at 3:00 a.m. is relevant as well, but still, considering all the factors together, a reasonable officer in these circumstances could not have formed *a particularized and objective basis* for suspecting that Marck was engaged in criminal activity. *United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018).

Therefore, the Court concludes that Marck has adequately alleged that the Officer Defendants did not have reasonable suspicion in these circumstances, and he has adequately alleged a Fourth Amendment violation based on being seized without reasonable suspicion.

(ii)     Qualified Immunity

The Officer Defendants argue that they are entitled to qualified immunity because it was not clearly established that these circumstances did not give rise to reasonable suspicion. (ECF No. 28 at 9–10.) To overcome qualified immunity, Marck must show that his right was "clearly established at the time of the conduct at issue." *Thomas*, 765

F.3d at 1194 (internal quotation marks omitted).

Marck's argument on this issue relies almost exclusively on an unpublished Sixth Circuit opinion, *Folks v. Petitt*, 676 F. App'x 567 (6th Cir. 2017). This case is of very limited relevance to the Court's qualified immunity analysis for two reasons. First, the Tenth Circuit has explained that unpublished opinions "provide[] little support for the notion that the law is clearly established." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007). Second, a citation to a single out of circuit case is undoubtably insufficient to show that Marck's right was "clearly established [by the] weight of authority from other courts." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006).

Since Marck does not make an argument based on law binding in this circuit, the Court finds that he has failed to meet his burden of showing that under these circumstances it was clearly established that the Officer Defendants lacked reasonable suspicion. Therefore, Marck has failed to overcome Officer Defendants' qualified immunity defense. Thus, Claim Two, insofar as it is based on an alleged stop without reasonable suspicion, is dismissed without prejudice.[2]

        b.     *Second Theory: Unconstitutional Arrest Without Probable Cause*

In his Complaint, Marck alleges an alternate theory to support Claim Two. He alleges that he was unreasonably seized when Officer Trenery arrested him without probable cause. (ECF No. 25 ¶¶ 31, 43–44.) In their Motion, the Officer Defendants do not challenge Marck assertion that he was arrested when he was pulled from the truck.

---

[2] Should Marck decide to amend his Complaint and reallege this claim, he must be prepared to cite binding Tenth Circuit or Supreme Court law in response to an affirmative defense of qualified immunity.

10

(*See* ECF No. 36 (the Officer Defendants acknowledging that Officer Trenery "effect[ed] his arrest" when he pulled Marck from his truck).) Thus, for the purposes of this Order, the Court accepts Marck's unchallenged allegation that he was arrested when he was pulled from his truck.

The Tenth Circuit has explained what is required in order for an arrest to be reasonable under the Fourth Amendment:

> Arrests must be based on probable cause. Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.

*United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998).

The Officer Defendants have provided no argument to show that they are entitled to dismissal on Marck's claim that he was unreasonably arrested without probable cause. (*See generally* ECF No. 28.) Therefore, they have failed to meet their burden under Rule 12(b)(6) to show that they are entitled to dismissal on this claim. *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003); *see also Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("While the text does not discuss the burden of proof, every circuit court to address this issue—this Court included—has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal.").

However, even if the Officer Defendants had challenged this portion of Claim Two, the Court would find that Marck has adequately alleged that he was unconstitutionally arrested without probable cause. As discussed above, Marck has adequately alleged that the Officer Defendants did not have reasonable suspicion to support the initial investigatory stop. In determining whether the Officer Defendants had

probable caused to pull Marck from his truck and arrest him, the Court need only consider one additional factor: Marck's refusal to hand over his license and registration when Officer Trenery asked him to do so.  And the Court finds that this additional factor is not enough to establish probable cause here.  In *Florida v. Royer*, 460 U.S. 491 (1983), the Supreme Court held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business.  *Id.* at 498.  And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."  *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

Considering all the circumstances present at the time Officer Trenery pulled Marck from the truck, a reasonable officer would not have an objective basis to believe that an offense had been or was being committed by Marck.  *Anchondo*, 156 F.3d at 1045.  Therefore, the Court concludes that Marck has adequately alleged that the Officer Defendants did not have probable cause, and he has adequately alleged a Fourth Amendment violation based on being arrested without probable cause.

Thus, the Motion is denied with respect to Claim Two insofar as it is based on Marck's alleged arrest without probable cause.[3]

---

[3] The Court does not engage in a qualified immunity analysis here because the Officer Defendants fail to raise qualified immunity as to this portion of Claim Two.  In the very brief "Qualified Immunity" section of the Officer Defendants' Motion, they focus entirely on their arguments regarding reasonable suspicion.  (ECF No. 28 at 10.)  This is important because a party who raises qualified immunity as a defense but does not engage in any analysis to support the defense, waives the defense.  *Sayed v. Lt. Page Virginia*, 2017 WL 5248048, at *3–4 (D. Colo. Nov. 13, 2017) ("[B]ecause the Defendants mention the defense without engaging in the analysis, they have failed to raise the affirmative defense of qualified immunity. In failing to develop this argument, they have effectively waived the affirmative defense."); *see also Custard v. Balsick*, 2017 WL 131799, at *21 (D. Colo. Jan. 13, 2017) (declining to address the qualified immunity defense because "Defendants provide no reasoning for why they believe a reasonable prison officer would not have understood that the conduct alleged in Claims 1 through 3 would violate the Eighth Amendment."); *Guion v. Spurlock*, 2015 WL 394020, at *10 (D. Colo. Jan. 29,

2.    <u>Claim One Against All Defendants: Excessive Force</u>

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Fed Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396. A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)).

The Tenth Circuit explained the difference between an unlawful arrest analysis and an excessive force analysis:

> We hold that in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it. If

---

2015) (recommending finding that one defendant was not entitled to qualified immunity because "[a]side from a conclusory statement regarding all of [the p]laintiff's claims, . . . [d]efendants do not argue that the law regarding First Amendment retaliation was not clearly established."). In short, the Officer Defendants have not provided the Court with any legal analysis regarding whether Marck's right to be free from arrest without probable cause was clearly established in the circumstances presented in this case.

> the plaintiff can prove that the officers lacked probable
> cause, he is entitled to damages for the unlawful arrest,
> which includes damages resulting from any force reasonably
> employed in effecting the arrest.  If the plaintiff can prove
> that the officers used greater force than would have been
> reasonably necessary to effect a lawful arrest, he is entitled
> to damages resulting from that excessive force.  These two
> inquiries are separate and independent, though the evidence
> may overlap.  The plaintiff might succeed in proving the
> unlawful arrest claim, the excessive force claim, both, or
> neither.

*Cortez*, 478 F.3d 1108 at 1127.  "Thus, in a case where police effect an arrest without

probable cause or a detention without reasonable suspicion, but use no more force than

would have been reasonably necessary if the arrest or the detention were warranted,

the plaintiff has a claim for unlawful arrest or detention but not an additional claim for

excessive force."  *Id.* at 1126.

Marck argues that Officer Trenery's use of force was unreasonable because no

crime had occurred and yet Officer Trenery pulled Marck out of his truck and told him he

would be tased.  (ECF No. 36 at 5.)  This argument is unavailing because, as discussed

above, the Tenth Circuit requires the Court to assume the arrest was valid in evaluating

an excessive force claim.[4]

The Officer Defendants argue that Officer Trenery had the right to use some

amount of force to effect Marck's arrest.  (ECF No. 28 at 8.)  Further, they argue that

Marck's allegations do not demonstrate that any force was used beyond what was

---

[4] Marck also cites a non-binding unpublished Sixth Circuit case, *Folks*, 676 F. App'x 567.
But *Folks* involved a greater amount of force than alleged here.  In *Folks*, the arrestee was
pulled from his car and slammed against it with enough force to cause facial, neck, and head
contusions.  *Id.* at 572.  But here, Marck alleges that he was pulled from his truck and "put"—not
slammed—on the ground.  (ECF No. 25 ¶ 24.)  Additionally, the extent of Marck's injuries are
not clear because he alleges that "his arm and wrist became injured" without describing the
extent of the injury.  (*Id.*)  Thus the Court does not find this argument persuasive.

necessary in the circumstances.  (ECF No. 45 at 2.)

The Court agrees with the Officer Defendants.  The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id.* (internal quotation marks and citation omitted); *see also A.M. v. Holmes*, 830 F.3d 1123, 1151 (10th Cir. 2016) (stating that officers have the right to use some degree of physical coercion to effect an arrest).

Officer Trenery put Marck on the ground, he did not slam him to the ground.  He pulled him out of the car, but in a way that is not alleged to have caused serious injuries.  The Court finds this amount of force to be insufficient to support an excessive force claim in these circumstances.

Therefore, the Court finds that Marck has failed to state a Fourth Amendment claim for excessive force.  Thus, the Court grants this portion of the Officer Defendants' Motion and dismisses Claim One without prejudice.

### 3.    Claim Three Against Officer Perrott: Failure to Intervene

In his Complaint, Marck alleges a Fourth Amendment failure to intervene claim against Officer Perrott.  (ECF No. 25 ¶¶ 39–44.)  He alleges that Officer Perrott knew that there was not reasonable suspicion for a stop or probable cause for an arrest, and that he intentionally chose not to intervene when Officer Trenery unlawfully stopped and arrested Marck.  (*Id.* ¶ 44.)

The Officer Defendants argue that Marck's failure to intervene claim must fail because Marck has failed to plead an underlying constitutional violation.  (ECF No. 28

at 9.)  This argument is persuasive as to Claim One and Claim Two insofar as it is based on the alleged stop without reasonable suspicion.  However, the Court found that Marck has adequately alleged a constitutional violation based on his alleged arrest without probable cause.  Therefore, as to that part of Claim Two, Marck has adequately pleaded an underlying constitutional violation and the Officer Defendants' argument is unavailing.[5]

Thus, this portion of the Officer Defendants' Motion is granted as to Claim One, as well as Claim Two, insofar as it is based on the alleged stop without reasonable suspicion, and such claims are dismissed without prejudice.  As set forth above, the Officer Defendants' Motion is denied as to Claim Two insofar as it is based on the alleged arrest without probable cause.

**B.     The City's Motion**

Section 1983 imposes liability on

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  The Supreme Court held in *Monell v. Department of Social Services* that "person," as used in this statute, includes "municipalities and other local government units," more specifically, "local government units which are not considered

---

[5] The Officer Defendants correctly state that an officer must have a feasible opportunity to intervene to be held liable under a failure to intervene theory.  (ECF No. 28 at 9.)  But the bare recitation of a legal standard is not an argument.  Thus, the Court finds that the Officer Defendants have waived this argument.  *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis is deemed waived).

part of the State for Eleventh Amendment purposes."  436 U.S. 658, 691 & n.54

(1978).[6]

However, a local government unit can be liable for damages under § 1983 only

when its "policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the [constitutional] injury."  *Id.*

at 694.  The Supreme Court has thus "required a plaintiff seeking to impose liability on a

municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the

plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those

deprivations resulting from the decisions of its duly constituted legislative body or of

those officials whose acts may fairly be said to be those of the municipality," rather than

holding the municipality liable simply because it employed a constitutional wrongdoer.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997).

The relevant policy or custom can take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal
> custom amounting to a widespread practice that, although
> not authorized by written law or express municipal policy, is
> so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees
> with final policymaking authority; (4) the ratification by such
> final policymakers of the decisions—and the basis for
> them—of subordinates to whom authority was delegated
> subject to these policymakers' review and approval; or (5)
> the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the
> injuries that may be caused.

---

[6] The Eleventh Amendment reads, "The Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
The Supreme Court construes this language to mean, among other things, that states may not
be sued (even by their own citizens) for money damages in federal court.  *See Hans v.
Louisiana*, 134 U.S. 1, 10–15 (1890).

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated).  But, whatever species of policy or custom is alleged,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404 (emphasis in original).

Marck argues that he has plausibly alleged a *Monell* claim against the City based on a failure to train theory and an informal custom theory.  (ECF No. 35 at 4–11.)  He seeks to hold the City liable in relation to both Claim One (excessive force) and Claim Two (unreasonable seizure).  (*Id.*)  But "[a]bsent a showing of constitutional injury, a municipality cannot be liable for damages, regardless of the existence of a policy or custom."  *Holmes v. Town of Silver City*, 826 F. App'x 678, 682 (10th Cir. 2020).  Therefore, Marck cannot state a *Monell* claim in relation to Claim One, which does not state a claim.

Thus, the Court dismisses without prejudice all claims against the City insofar as they are based on Claim One.  The Court goes on to analyze Marck's *Monell* claim against the City insofar as it relates to Claim Two.

      1.    <u>Failure to Train</u>

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"  *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).  The "well

established" elements of a § 1983 claim for inadequate use-of-force training for police

require a showing:

> (1) the officers exceeded constitutional limitations on the use
> of force; (2) the use of force arose under circumstances that
> constitute a usual and recurring situation with which police
> officers must deal; (3) the inadequate training demonstrates
> a deliberate indifference on the part of the city toward
> persons with whom the police officers come into contact; and
> (4) there is a direct causal link between the constitutional
> deprivation and the inadequate training.

*Id.*

"However, a municipality's culpability for a deprivation of rights is at its most

tenuous where a claim turns on a failure to train."  *Erickson v. City of Lakewood, Colo.*,

489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) (alterations omitted) (quoting *Connick v.*

*Thompson*, 563 U.S. 51, 61 (2011)); *see also Oklahoma City v. Tuttle*, 471 U.S. 808,

822–23 (1985) (plurality opinion) (observing that a policy of inadequate training is "far

more nebulous, and a good deal further removed from the constitutional violation, than

was the policy in *Monell*.").

"To satisfy the stringent deliberate indifference standard, [a] pattern of similar

constitutional violations by untrained employees is ordinarily necessary."  *Waller v. City*

*& Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019).

Marck argues that he has adequately alleged the City's deliberate indifference by

alleging a pattern of similar constitutional violations.  (ECF No. 25 ¶¶ 48–50.)  He

alleges two similar events.  (*Id.*)  First, Marck alleges that on August 24, 2019, City

Police Officers, who were responding to a call about a suspicious person, stopped a

man, detained him with excessive force, and eventually killed him.  (*Id.* ¶ 49.)  He

alleges that an independent investigation revealed that the officers did not have

probable cause to stop the man.  (*Id.*)  Second, Marck alleges that on November 21, 2018, a City Police Officer responding to a noise complaint illegally ordered a man to exit his garage, and when he refused, the officer grabbed him, slammed him to the ground, and handcuffed him.[7]

The City argues that Marck has not alleged enough examples of unconstitutional seizures similar to his own to plausibly allege a pattern.  (ECF No. 27 at 6–7.)

The Court agrees with the City.  The Tenth Circuit has held that "[o]ne prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations."  *Waller*, 932 F.3d at 1287.  The prior instances alleged present very different circumstances than this case: most importantly, the level of forced used was substantially higher in those instances than here.  Because Marck only alleges two relevant prior incidences, and even those incidents are not very similar to the events at issue in this case, the Court finds that Marck has not plausibly alleged a pattern of similar violations.

Marck also argues that a report produced by 21CP Solutions, a consultant hired by the City, shows that the city was on notice about the deficiencies in its training practices. (ECF No. 35 at 5–6.)  But the report cited by Marck was released on August 16, 2021, almost two years *after* his interaction with the Officer Defendants on September 11, 2019.  (ECF No. 25 ¶ 51.)  The Court finds that the 2021 report is

---

[7] Marck alleges two additional similar arrests beyond those discussed here but the Court does not find either of them to be relevant.  (ECF No. 25 ¶ 49(a), 49(c).)  The first occurred after the events at issue here and therefore cannot be used to establish that the City was on notice of a deficiency in its training at the time Marck alleges he was unconstitutionally seized.  (*Id.*)  The second does not include an allegation that the officers were acting without probable cause, which is what is at issue here.  (*Id.*)

irrelevant to the question of whether the City was aware of problems in its training procedures in 2019.

For the reasons discussed above, the Court finds that Marck has failed to state a claim against the City under a failure to train theory.  Therefore, this part of the City's Motion is granted, and Claim Four, insofar as it is based on a failure to train theory, is dismissed without prejudice.

2.  <u>Informal Custom</u>

"[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Bryan Cnty.*, 520 U.S. at 404 (internal quotation marks omitted); *see also City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988) (establishing an informal policy or custom requires the plaintiff to show that the misconduct was widespread—*i.e.*, that it involved a series of decisions).

The Court finds that Marck has not alleged enough similar prior incidences to show that the City has a practice that is "so widespread as to have the force of law." *Bryan Cnty.*, 520 U.S. at 404.  Two prior instances of arrests without probable cause are simply not enough to establish a widespread practice, especially considering the large amount of arrests that take place on a daily basis.  *Waller*, 932 F.3d at 1290 (10th Cir. 2019) (finding that allegations "describing only one similar incident . . . fall far short of plausibly alleging a 'widespread practice.'").

Thus, the Court finds that Marck has failed to state a claim against the City under an informal custom theory.  Therefore, this portion of the City's Motion is also granted, and Claim Four, insofar as it is based on an informal custom theory, is dismissed

without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.     Defendants Paulmichael Trenery and Joshua E. Perrott's Motion to Dismiss on

Behalf of Officer Defendants (ECF No. 28) is GRANTED IN PART and DENIED

IN PART as follows:

    a.     The motion to dismiss Claim Two against Officer Trenery, insofar as that

    claim is based on the allegation that Marck was arrested without probable

    cause, is DENIED;

    b.     The motion to dismiss Claim Three against Officer Perrott, insofar as that

    claim is based on the allegation that Officer Perrott failed to intervene

    when Marck was arrested without probable cause, is DENIED;

    c.     The Officer Defendants' Motion (ECF No. 28) is GRANTED in all other

    respects, and all such claims are DISMISSED WITHOUT PREJUDICE;

2.     Defendant City of Aurora's Motion to Dismiss Plaintiff's Amended Complaint and

Jury Demand (ECF No. 27) is GRANTED;

3.     All claims against Defendant City of Aurora are DISMISSED WITHOUT

PREJUDICE; and

3.     Should Marck believe himself in a position to plausibly plead facts which would

cure the pleading deficiencies noted in this Order, he may file an amended

complaint by no later than **April 29, 2022**.

Dated this 25th day of March, 2022.

BY THE COURT:

William J. Martinez
United States District Judge